### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re:  Joseph and Jennifer Davis, Jr. | : | CHAPTER 13 |
| Debtors. | : | BKY. NO. 14-18184 (SR) |
| Joseph and Jennifer Davis,<br>Plaintiffs/Debtors | : | |
| | : | Adv. Proc. No. _____ |
| v. | | |
| | : | |
| Wells Fargo Bank, N.A.<br>Conestoga Bank, Bryn Mawr Trust Company,<br>Tohickon Abstract Company, and First American<br>Title Insurance Company,<br>Defendants. | :<br><br><br>: | |

**COMPLAINT TO DETERMINE THE VALIDIITY AND SECURITY INTEREST
OF CREDITORS' ALLEGED SECURED CLAIM AND FOR DECLARATORY RELIEF**

**Introduction**

This is an action brought by the Debtors, Joseph and Jennifer Davis, (hereinafter, the "Plaintiffs," or the "Debtors") pursuant to 11 U.S.C. Section 506(a) and Rule 3012 of the Federal Rules of Bankruptcy Procedure to determine the value of the interests of the Defendants, Wells Fargo Bank, N.A. ("Wells"), Conestoga Bank ("Conestoga") and Bryn Mawr Trust Company ("Bryn Mawr") in the residential real estate of the Debtor and to determine the amount of the alleged secured claim of Wells, Conestoga and Bryn Mawr (collectively, the "Banks") and for equitable subordination to prevent, inter alia, certain unjust enrichment to Conestoga and Bryn Mawr.  Plaintiffs also seek declaratory relief demanding that Tohickon Abstract Company and First American Title Insurance Company take the necessary steps to correct the title on the Plaintiffs' primary residence at 3 Wrights Court, Garnet Valley, PA  19060 (the "Property") by declaring the Banks' lien priorities to their rightful positions or making the proper restitution to

Wells or Conestoga for the mistaken title.

## Jurisdiction

1.	The Plaintiffs allege that this is a core proceeding as that term is defined by Section 157(b)(2) of Title 28 of the United States Code, in that it concerns claims and matters arising out of the administration of this bankruptcy case and rights duly established under Title 11 of the United States Code and other applicable federal law.

2.	The Plaintiffs further allege that this Court has both personal and subject matter jurisdiction to hear this case pursuant to Section 1334 of Title 28 of the United States Code and Section 157(b)(2) of Title 28 of the United States Code.

## The Main Case and the Parties

3.	The underlying Chapter 13 bankruptcy case was commenced by the filing of a voluntary petition with the Clerk of this Court on October 12, 2014.

4.	An Order for Relief under the provisions of Chapter 11 of Title 11 of the United States Code was duly entered by this Court upon the filing of the petition.  This order served to invoke the provisions of Section 362(a) of Title 11 of the United States Code.

5.	The 341(a) meeting of creditors is to be held on February 13, 2015.  A plan has been filed with the court and will be amended to allow for some payment to be made despite the unresolved issue relating to the proper lien position of the Banks on the Debtors' real property and the subject of this adversary proceeding.

6.	The Defendants are, upon information and belief, entities engaged in the business of providing for and insuring mortgages and other loans.  Each defendant maintains a principal place of business in Pennsylvania or some state other than the Commonwealth of Pennsylvania.

**Factual Allegations**

7. Plaintiffs have encumbered the Premises with mortgages and/or personal guarantees from the three defendant Banks.

8. Wells alleges that it maintains a mortgage in the first lien position (the "First Wells Mortgage") pursuant to a money mortgage in the amount of $417,000 and recorded on August 3, 2009.

9. At the time of the recording of the First Wells Mortgage, Bryn Mawr allegedly maintained a second lien position on the Debtors' premises in the amount of $131,000 entered into on July 22, 2009 and recorded on or about August 3, 2009 (the "Bryn Mawr Mortgage").

10. On or around the same time, Conestoga held a business loan personal guaranty (the Business Guaranty for the Debtor husband's former business, Davis Auto, Inc.) in the amount of $250,000 and dating back to March 31, 2000 (the "Conestoga Guaranty").

9. On April 12, 2013, the Plaintiffs and Wells refinanced the First Wells Mortgage which gave Wells a new mortgage in the amount of $396,000 to secure the Premises under a refinanced loan (the "April 2013 Wells Refinance").

10. During the April 2013 Wells Refinance application process, the Debtors worked closely with Marc Duncan, an agent of Wells.

11. At all times during the April 2013 Wells Refinance, the Plaintiffs informed Wells, through Mr. Duncan that the Bryn Mawr mortgage and the Conestoga Guaranty both were inferior to Wells.

12. Specifically, on January 25, 2013, Joseph Davis, the Debtor-husband asked Mr. Duncan if he spoke with "Ed Fitzgerald from Conestoga Bank…" regarding a "release letter for the 3rd lien on the property…" Mr. Davis, not being a lawyer or a banker confused the terms of "release letter" with "subordination document." *See* e-mail from Joseph Davis to Marc Duncan,

dated January 25, 2013 attached, as Exhibit "A," hereto.   Regardless, Mr. Duncan clearly understood that Mr. Davis was concerned with the subordination of the Conestoga Guaranty as he assured Mr. Davis on January 28, 2013 that he had spoken to an Ed Fitzgerald about the "list of information he will require to complete the subordination…." *See* e-mail from Marc Duncan to Joe Davis dated January 28, 2013, attached as Exhibit "B," hereto.

13. Again on January 31, Marc Duncan sent a very detailed e-mail to Mr. Davis regarding the requirements for the subordination of the Bryn Mawr mortgage.  *See* email from Marc Duncan to Joe Davis dated January 31, 2013, attached as Exhibit "C," hereto.

13. Unfortunately, however during the closing of the April 2013 Wells Refinance, the Conestoga Guaranty was never subordinated to either the Wells or Bryn Mawr mortgages, despite having a third lien position for at least 13 years.

14. Conestoga received a "windfall" because no subordination agreement was ever signed at the closing, despite Mr. Davis's insistence to Marc Duncan to provide those documents.

15. Due to Wells' failure, either through its home mortgage representative, Mr. Duncan or through their own title company, Conestoga jumped in front of Bryn Mawr and Wells in priority lien position.

16. Naturally, as the Debtors were not making any payments on the Conestoga Guaranty, Conestoga swiftly moved to obtain judgment and foreclose on the Debtor's Premises.

17. The Debtors believed and therefore alleged in their petition and schedules that there was little or no equity in their residential real estate to which a second or third mortgage could secure at the time that the Bankruptcy Petition was filed and therefore, any such claims should be paid as unsecured claims under the terms of the Debtors' Plan.

18. The Plaintiffs allege that at the time they filed their bankruptcy petition the value of their interest in their real property was $530,000.  At the present time the value of their interest in

the said residential real estate is still approximately $530,000 based upon the letter from the realtor set forth as Exhibit "D", incorporated herein and attached hereto.

19. The Plaintiffs' allege that their interest in the real estate should be subject to a first lien arising out of a mortgage now in favor of Wells in the amount of approximately, $390,000.

20. The Plaintiffs' allege that their interest in their residential real estate is subject to a second lien arising out of a mortgage to Bryn Mawr in the approximate amount of $132,000.

21. The Plaintiffs allege that their interest in their residential real estate is also subject to a third lien arising out of a mortgage to Conestoga in the approximate amount of $250,000.

22. The lien securing the alleged second and third mortgages of the Defendants is junior to the alleged first mortgage listed above as owing to Wells.

23. The Plaintiffs allege that there was little or no equity in their home at the time their bankruptcy petition was filed and therefore, whichever Defendant bank that would be in the third lien position would only have a partially secured interest or completely unsecured interest for the loan secured against the Debtors' real estate.

24. Therefore, any timely filed claim for whichever Defendant Bank that would be in the third lien position is allowable only as an unsecured or partially secured claim in the Debtors' Plan. To the extent that no such claim was filed or is later deemed as not allowed, such Defendant has no claim against this estate.

**WHEREFORE,** the Plaintiffs respectfully pray of the Court as follows:

A. That this Court equitably subordinate the Conestoga Guaranty to prevent, inter alia, certain unjust enrichment to Conestoga and Bryn Mawr.

B. That this Court provide declaratory relief demanding that Tohickon Abstract Company and First American Title Insurance Company take the necessary steps to correct the title on the Plaintiffs' primary residence at 3 Wrights Court, Garnet Valley, PA 19060 (the "Property")

by declaring the Banks' lien priorities to their rightful positions or making the proper restitution to Wells or Conestoga for the mistaken title.

  C. That this Court determine that certain Defendant banks have only an unsecured or partially secured interest for the loan secured by any deed of trust on the residential real estate of the Debtors;

  D. That this Court order the appropriate Defendant Bank to cancel the wholly unsecured lien on the residential real estate of the debtors pursuant to 11 U.S.C. Section 506(d), immediately upon the entry of the Discharge Order and deliver the same to the attorney for the Debtors within 20 days from the date of the entry of the said order at no charge or fee for the aforesaid cancellation and delivery;

  E. That the Plaintiffs have such other and further relief as the Court may seem just and proper.

            Respectfully submitted,

            *CENTER CITY LAW OFFICES, LLC*

            By: */s/Maggie S. Soboleski*
            Maggie S. Soboleski
            Pa. Id. No.: 88268
            2705 Bainbridge Street
            Philadelphia, PA 19146
            Tele.: 215-620-2132
            E-Mail: msoboles@yahoo.com
            Attorney for the Plaintiffs, Joseph and Jennifer Davis

Dated: January 20, 2015